Our next case is United States v. Cruz, 24-1306. Counsel, you may proceed. Good morning, Your Honors. Amy Senya from the Denver Federal Public Defender's Office on behalf of the appellant, Mr. Jordan Cruz. May it please the Court. The District Court committed multiple sentencing errors in this case. I plan to start with the crime of violence issue, but I'm happy to discuss any other issue that the Court has questions about. The District Court here increased Mr. Cruz's base offense level from 14 to 20, ruling he had a prior crime of violence conviction based on a state court judgment that everyone in the courtroom, including the Court itself, knew listed the wrong offense. And the crime that Mr. Cruz actually pleaded guilty to, Colorado assault by drugging, isn't a federal crime of violence because its least culpable act involves causing only mental harm, not physical harm capable of causing physical injury or physical pain. This Court should reverse and remand for resentencing. So when the District Court added six levels to Mr. Cruz's base offense level, that ruling came in two parts. The first was that the District Court identified the prior fact of conviction by relying exclusively on the state court judgment that everyone agreed listed the wrong offense because it believed it had no legal authority to consider any other documents. That ruling was wrong. This Court's precedent and the guidelines allow courts to consider any sufficiently reliable evidence to determine the fact of a prior conviction. And here, when the Court did look past the judgment and found that the judgment was wrong and that Mr. Cruz had instead pleaded guilty to assault by drugging. The second part is that Colorado assault by drugging isn't a crime of violence. The guidelines crime of violence definition relevant here is that it has as an element of the offense the use of violent physical force. That is force capable of causing physical pain or physical injury. And here, the least culpable acts criminalized just by the plain text of the Colorado drugging statute requires causing nothing more than mental impairment or mental injury. Could we just, on that point, separate the injury from what causes the injury? So, wouldn't administration of a drug to another person without that person's consent be physical force, leaving aside the injury part? It is the indirect application of force. We agree. The question is whether it rises. Why is it even indirect? I mean, if you're administering a drug to someone without their consent, why would that even be indirect? I believe the Supreme Court case calls it indirect application of force. It could be direct. It doesn't matter to us whether it's direct or indirect. Our point is that it's force. The question is whether it rises to the level of violent physical force. And that depends on the injury. That's right, Your Honor. Whether it's capable of causing physical pain or physical injury. And your argument is that if the statute includes mental impairment injury, then it sweeps too broadly. That's exactly right, Your Honor, because there's multiple ways that you could have an application of force that isn't capable of causing physical pain or physical injury if, like here, all it does is cause mental impairment. And so the government's attempt to narrow the statute makes no sense. The generic meaning of mental means non-physical. It's relating to the total emotional and intellectual response of an individual. And yet the government defines mental as brain, but cites no Colorado case, no Colorado statute, no dictionary defining mental in that non-generic way. And so the government can't meet its burden here to show that the statute falls within the federal crime of violence definition. What is your best case on this issue? So I think I would point the court to Castro, a 2023 Ninth Circuit case, though there's two other cases that are also very helpful for us. Sanchez-Perez out of the Sixth Circuit, 2024, and Burris, 2019. In all of those cases, other circuits determined that where the definition of bodily injury for their assault statutes wrapped in mental illness or mental impairment, that those statutes were overbroad. Because even if they required application of force, they didn't require violent force capable of causing physical pain or physical injury. Is Winrow your best Tenth Circuit case? I think Winrow is a case that is helpful to explain our force argument, that we agree there's force, it's just not violent force. And so I think Winrow is helpful in showing it is like a slight touching. That the administration of a drug is like a slight touching, but we're looking at the effects here because it encompasses mental injuries, mental harms, then it is overbroad. So if there are no more questions about the crime of violence issue, I will proceed to the acceptance of responsibility issue. Here, the district court erred because it misinterpreted and misapplied the acceptance of responsibility guideline because it withheld the reduction based on defense counsel's purportedly frivolous reliability objection to the PSR. Application note 1A says that courts can deny acceptance points based on relevant conduct only when the defendant falsely denies or frivolously contests factual guilt. That does not encompass the situation here when a lawyer makes a legal objection, whether or not it's frivolous. So let me ask you this, so if the argument before the district court had been, your honor, object to the PSR, he didn't do it, what's that? That would seem, and then the district court goes on to find that in fact he did do it. In that case, that seems to be a false denial. I think it would present a question of whether counsel can speak for the defendant himself. The cases where the courts affirm denial of the acceptance reduction, it's the defendant himself usually testifying, sentencing hearing, or saying something. But in that situation, it would be more akin to a false denial, though I think you'd have to ask if counsel can do that. Right, okay, fair enough. So here, defense counsel raised an evidentiary challenge to the PSR's allegations. That was a legal objection that didn't deny Mr. Cruz's factual guilt. The government doesn't really contest that application note 1A doesn't cover legal challenges. So if the court agrees that that is in fact what Mr. Cruz's counsel did, then that's sufficient to rule in Mr. Cruz's favor. Didn't the counsel's objection, didn't it go to the weight of the evidence? No, Your Honor. So as a threshold matter for sentencing purposes, the court can rely on anything. Any evidence, the rules of evidence don't typically apply. The only requirement is that it meets some threshold amount of reliability. It has to be sufficiently reliable for the court to rely on it. And so if that's the objection, then the question is whether, whatever it is the counsel's objecting to here, PSR allegation, whether it meets that sufficient indicia of reliability standard that the guidelines set. And in that case, that's the only question. Did I answer Your Honor's question? Is that a legal, is that why it's a legal objection? It's a legal objection for a couple of reasons, Your Honor. If we look to this Court's decision in McDonald, there was a reliability objection to the PSR there. And on appeal, one of the defendant's claims was, well, the district court didn't make its fact, it didn't fulfill its fact-finding obligation under Rule 32. And this Court said, well, it didn't have to fulfill a fact-finding obligation under Rule 32 because there was no disputed fact. All you did was dispute the reliability. So it's a threshold question about whether the court can consider the allegation or consider the evidence. Aren't we kind of in the gray area of a mixed question of law and fact if we're talking about reliability? How can that determination be made without considering the facts? So I think you could characterize it as a mixed question of fact or law, Your Honor. But the question for this guideline is whether it's a factual denial of guilt. And a reliability objection, because it doesn't raise a factual objection, a factual challenge at all, that's what this Court said in McDonald, then it's not, it can't possibly be considered a factual denial of guilt. And the other reason, Your Honor, is because this Court has said that, so the government makes the point that on appeal, if you challenge reliability determination by the court, that's reviewed for a clear error. The government says it's a clear error, it must be a factual question. This Court in Martinez and again in Anderson made the point that, yes, it's clear error review, but it's more akin to an evidentiary ruling like under the rules of evidence. You know, if counsel makes a doubler challenge, there has to be a determination by the court about whether the evidence or the expert's opinions are sufficiently reliable. That's reviewed for abuse of discretion. This Court has suggested that abuse of discretion would be a more appropriate standard, given that it is an evidentiary ruling. But the court doesn't have to decide that. The only question for the acceptance of responsibility claim brought here is whether it was a factual denial of guilt. And here it was not. If there are no other questions there, I would like to just briefly address harmlessness. The government, of course, has the burden to show that the errors were harmless. These are guidelines errors, so they're presumptively prejudicial. So the government has to show this is the very rare case where the incorrect guidelines range didn't affect the sentence, and they can't possibly do that here, where the range that the court calculated was 92 to 115 months. And if Mr. Cruz is correct on both errors, that would make the guidelines range significantly lower at 41 to 51 months. Doesn't the district court's sentencing methodology suggest that the calculation of the guideline range didn't have much effect on the ultimate sentence? If it did, Your Honor, that wouldn't be the basis or couldn't be the basis of harmlessness because it is itself an independent error, which is why we raised that as our third claim. But if what the court was really doing was throwing up its hands and saying, I don't know what the guidelines were here, but I'm going with my gut, because that is a separate and independent error. We know from this court's case law in Pena-Hermosillo that that can't be the basis of finding harmlessness. So if the court said that, and that is clearly wrong, I think, and we say, well, then the court's methodology was wrong, everything that flowed from that is not dependable, would that be all that our appellate court would need to say, or would we need to get into the other issues that you've been arguing today? I think that could be all that the court says. If the methodology is just plain wrong, can we salvage anything for further discussion by us? I think that that would be a way for Your Honors to resolve this case, to say this methodology was wrong and send it back. I think because of the way that federal sentencing works, the guidelines are the lodestar, they have to start there, and then that is the proper methodology. It would be certainly helpful to the district court to receive guidance from this court on what the proper guidelines calculation was. So what would you think would be helpful? I mean, sometimes we do that. We say, look, we're going to give you a little guideline here about what we'd like to see done. What would you like to have the court say? I think it would be helpful if the court considered and addressed the guidelines errors and said, you're allowed to look at anything, you're allowed to say that, indeed, he was convicted of second-degree assault by drugging. That's not a crime of violence, and you can't take away acceptance points based on an objection that counsel raises that doesn't deny factual guilt. So, you know, adjusting the guidelines with those things in mind, you have to start there. That has to be your lodestar. From that point, you can decide to vary upward or downward and explain your reason, but you can't rely on your gut. I think the risk would be that you could demand and say, you've got to go to the guidelines, and we'll end up with exactly the same sentence unless we get into some more of the parameters. So that's why I'm asking for your saying that consent by drugging is not a violent court. What else do you think would be a useful guideline thing for us to address? I think also the acceptance of responsibility, Your Honor, to make clear that legal arguments by counsel that don't deny factual guilt can't be a basis for withholding the acceptance points. That has to do with a defendant's personal contrition. I see my time has expired, but if I may finish my thought. And then, you know, making clear that the acceptance points for that reason should not have been withheld, and then, of course, going into the methodology and saying you can't go based on your gut, you have to start with the guidelines as lodestar, and then use a proper, reasonable, non-arbitrary method for deciding either to stick within that range or to vary upward or downward. Thank you, Your Honor. May it please the Court. Elizabeth Ford Malani on behalf of the United States. The district court correctly calculated Mr. Cruz's guidelines range based on his prior crime of violence conviction and his failure to accept responsibility. Any guidelines error was harmless, and the district court used a procedurally sound method to come to the final sentence in this case. This Court should affirm. I want to start quickly where, Judge Ebell, you left off about the sentencing methodology. And while the government contends our contention is that the methodology was wholly sound, this Court need not even address that issue at all because it is waived. That claim was not preserved in the district court, and plain error was not raised in the opening brief. So for these reasons, under this Court's precedent like Loeffler, this Court need not resolve that issue. So I want to go back to the crime of violence issue for a moment. For the reasons discussed in the answer brief, we also believe the contention that the Court erred by looking beyond the Colorado judgment in this case, we believe that was waived too. But in preparing for oral argument, I went back and I looked through those transcripts, and I think I agree with the reply brief that page 16 is not a good example of that waiver in volume 3. But I would direct the Court to just a few pages later on, page 20, when there is this discussion about how the Court is saying to counsel, the law doesn't allow me to look beyond this ambiguous judgment, and counsel agrees that that would be problematic. So I think that the combination of that statement, the numerous times the district court talked about how it was hemmed in by what was in the judgment, I think that that amounts to an intentional relinquishment of an own right. But if this Court gets to the crime of violence issue, I think that two cases can easily resolve this case without going into the thorny morass of the categorical approach. And I think those cases are this Court's opinion in Cherry, it's cited in the answer brief, and the Seventh Circuit's opinion in Miller. And Cherry talks about where an unambiguous judgment exists, there is no reason to look beyond it to discern the fact of the prior conviction. But what if you do? Maybe you don't have to, but in this case there... And I guess the other thing is, I mean, what about that says that you can't? You don't have to, but what says you can't when other evidence is before you? So I would point out that in Cherry there was other evidence before the Court. There was the, I mean, they talked about the Colorado Appellate Court opinion. I'm not sure if that was before the District Court, but that was certainly before the Appellate Court. But instead, this Court said our inquiry ends with the judgment, because that is the reflection of the conviction. Now, I don't disagree that that's not the crime that he pled guilty to. Even the district judge said it was wrong. It was wrong in the sense that that's not, and I don't dispute, that's not what Mr. Cruz agreed to plead guilty to. And we're just supposed to ignore all that? The unambiguous judgment is where the inquiry ends. Now, I will point out that there is a remedy to fix the judgment. Why is that? Why would the inquiry end there if there is clear evidence that that wasn't really the offense he pled guilty to? I think that it makes sense because the judgment is the record of conviction. That is the final, the buck stops with the judgment. Form over substance. Correct, Your Honor. And I would push back again and say that there is a remedy for this to have been fixed. And, in fact, that remedy is ongoing. It can be fixed at any time. So, but if this court disagrees that the court, the inquiry should have not stopped with the judgment, and sort of disagrees with Cherry and Miller, then I think that this court should conclude that Colorado's second-degree assault by drugging is a crime of violence. Before we get there, let me ask you, how do you correct, I mean, so defendant is sentenced, pursuant to the judgment, and you say, well, it can be corrected. So, okay. After the fact, it's corrected. What do you do then? File a 2255? Do you? I suppose it would depend on when that occurred. If that occurred before sentencing, I think that. But it didn't. Right, right. So at this point, I suppose it could be a 2255. But I think the key time to have fixed this was long ago. Why didn't the government try to fix it? I mean, everybody knew that it was wrong. I think that would pose. I mean, isn't that something that the government should be doing? They want to have their sentences based on what was really the basis for the sentence? Certainly. And I think that there would be difficult representation problems of the government trying to fix something on behalf of a defendant in state court. Isn't the government trying to fix something to render justice? Well, so to be candid, Your Honor, if you look back at the record, the court said this error, this problem with what the judgment says, that can be remedied because both of the Colorado second degree assault provisions are crimes of violence. So that was not an approach that the government took below. But I think that it is sound, given this court's opinion on Cherry. All right. Let's talk about crime of violence then. Certainly. So start with the statute. This is the second degree assault provision. For a purpose other than lawful, medical, or therapeutic treatment, the defendant intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him without his consent a drug, substance, or preparation capable of producing the intended harm. So let's dial in on some of those words. Impairment, the common meaning is damage or to make worse. And injury, similarly, means hurt, damage, or loss. So impairment and injury have similar meanings here, according to dictionary definitions, which is this damage or loss concept. Now, given that the mental injury in this case, or impairment, is caused by a substance or drug, not for medical or therapeutic treatment, I think the best reading of the statute must be that the mental, the aspect of the mind, must be the brain. And I recognize that the opposing, my opposing counsel's argument that that just reads physical right out of the statute. But I don't think that's true. The United States Supreme Court has recognized that, you know, redundancy in statutes to make sure that they encapsulate all the possible conduct is not uncommon. And looking at just this statute, there's redundancy, right? Because there's a, because. Yes. Is it a matter of redundancy, really? I mean, the statute says physical or mental impairment. Yes. I mean, it's framed in the disjunctive, which suggests that the mental impairment part is not physical. I think that a fair reading is that there is an intent to capture a lot of conduct, just the way drug, substance, or preparation is similarly. Well, would you agree that there may be more than one way to read that? It's possible. All right. And isn't, under the categorical approach, your burden to show that it clearly is categorically a crime of violence? So if there's more than one way of reading it, how do you meet the burden? So I think in that scenario, then we would go to this legal imagination. If it's not entirely clear if the conduct that the defense is posing falls into those plain terms, then we look to, well, has Colorado ever prosecuted anybody for second-degree assault for causing anguish? And not yet have I found a case where that is the scenario. And so I think that we go to legal imagination. I will point out that— Was anguish the only mental impairment that is possible? Those that were raised were embarrassment in the opening brief, fright, anguish, or embarrassment. And I think it makes sense, again, to have this particular understanding of mental. So if someone has a concussion, I think, of course that's a physical injury in the broadest sense because it happened to your body, and the body is part of the physical corpus, right? But I think it wouldn't be abnormal for us to call that a mental injury, a concussion. So I think it makes sense that— What if the defendant had administered some kind of drug without the victim's That's it. I think that would be hard to describe as an impairment, a hurt, damage, or loss. And I think that— That's not a mental impairment. It may require some treatment. It may require some medication. I don't think that I would describe that as a hurt, a damage, or a loss. A chemical response like anxiety because I think—I'm not a doctor, but my understanding is that anxiety is a chemical response in your brain. And I don't think that that can— We're back to physical impairment? Well, I just don't think that that would constitute what those words mean. I don't think that causing anxiety would be called an injury in an ordinary sense. That's the problem here is we don't know. And for the categorical approach, we have to know. I think that the plain meanings of the terms do not capture this fright, anxiety, or—and we don't have any cases. So, for instance, the reply brief for the first time, I'll note, cites Sanchez-Perez, Castro, and Burris. And in those cases, first of all, the statutes are different. They talk about mental illness, which perhaps could arguably encapsulate your anxiety approach. But again, at least in Castro, my memory is that there were state cases where there was no touch, there was no force at all. It was some sort of other behavior that was swept up in the statute in state prosecutions, which we just don't have here. So I think that's when we rely on this legal imagination idea. The categorical approach is not where we should sit and think of every sort of possible hypothetical, if that's not what the plain meaning of the statute is really capturing. I guess I'm still back on the burden here. Is it your burden to show that it's a crime of violence? It was in the district court, Your Honor, yes. All right. Can you point to any cases that hold that an offense is a crime of violence when mental impairment alone is sufficient for criminal liability? I haven't seen that. And I will note that it's possible because Colorado's statute is different than other states. I guess we could put it that way. And a couple other cases have noticed that Colorado's statutes are quite different nationally. But even if this Court disagrees with regard to the crime of violence calculation, I think this is absolutely a harmlessness case. This is the rare case where the record makes absolutely clear that the court was using the 3553A factors to sentence this defendant and not relying on the calculated range. In fact, it said that I counted eight different times in the sentencing transcript that it thought the guidelines here were a poor fit. So I think that instead, the court's reliance was what? A poor fit. A poor fit? A poor fit. Like it didn't fit the facts here and that it was incorrectly representing what the correct sentence should be to this court based on those 3553A factors, the violence that were involved in the prior assault convictions, the violence involved in this case, and as well as similar conduct in how that is addressed in other statutes, as well as the need to deter this particular defendant because this was not his first felon in possession offense. If the court has no further questions on that point, I would like to touch briefly on the acceptance of responsibility point. So I will note that Comment Note 1 in 3E1.1 is talking about frivolously contesting relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. It's not necessary for the defendant to deny his factual guilt on the elements. There's also a discussion of relevant conduct. So I want to point the court's attention to that. And just as Your Honor Judge Carson mentioned, the objection to the in connection with enhancement, it gets a little wild here, okay, the objection to the in connection with enhancement really called on the sufficiency and the weight of the evidence supporting whether or not Mr. Cruz pointed a gun at the victim in this case. This was not an argument that says, for example, this police report is unreliable as a matter of law because X, Y, Z reason. In fact, I don't even read the objection as talking about the police report. Instead, the objection was there are facts on one side and there are facts on the other. Therefore, you shouldn't apply the enhancement. And therefore, that is a purely factual question, not this sort of reliability as a matter of law. And what that objection ignored and what I don't see addressed in the opening brief is the fact that not only did the victim say the gun was pointed at me, but the victim identified that this was a Taurus 40 caliber. If that reliably showed that this relevant conduct occurred. And so counsel's failure to acknowledge that point and failure to acknowledge this record evidence with respect to the in connection with, that rendered this argument frivolous. Not only that, but then it wasn't withdrawn at sentencing after the government had attached to the court and provided to the court all these police reports talking about the gun and what kind it was. Let me ask you this. Does defense counsel then have to agree with the PSR's relevant conduct determination to ensure that the client receives acceptance of responsibility? I don't think that disagreeing would necessarily always be frivolous. If that makes sense, Your Honor. Does it make a difference that it's counsel rather than defendant making the argument? I don't think so either, Your Honor, because counsel acts as agent for the defense. And it's not like Mr. Cruz during his colloquy with the court said, you know, I disavow that objection. So I think that we always attribute, I see that my time is up. If I could finish my thought, Your Honor. Judge Matheson, I think that we always attribute these objections, these arguments to the defense. Regardless, any error was harmless for the reasons that are laid out in the brief. And we'd ask for this court to affirm. Thank you. Thank you, counsel. Time has expired. The case will be submitted and counsel excused. Thank you. Thank you.